Manuel **PEREZ**, Plaintiff,

v.

**MARINE TRANSPORT LINES**, Inc.,
Defendant.

No. 5164.

United States District Court
E. D. Louisiana,
New Orleans Division.

March 14, 1958.

---

10. LSA–R.S. 23:1331.

854

Raymond H. Kierr, Samuel C. Gainsburgh, Lloyd C. Melancon, New Orleans, La., for plaintiff.

Normann & Normann, David R. Normann, Frank Normann, New Orleans, La., for defendant.

J. SKELLY WRIGHT, District Judge.

The question presented by this case is the status of the plaintiff at the time of his injury. Specifically, was the injury covered by the Longshoremen's and Harbor Workers' Compensation Act[1] or by the Jones Act[2] and the general maritime law?

Perez was by occupation a seaman and a member of the National Maritime Union. He, along with others, was sent from the hiring hall of the Union to the USNS Mission Loretto,[3] not to serve as regular members of the crew of that vessel, but to give her tanks one final cleaning prior to inspection by U. S. Navy officials preparatory to the vessel's entering the ranks of the laid-up fleet. The tank cleaning was under the supervision of ship's officers and was performed with ship's equipment. The tank cleaners were kept on a separate payroll from the ship's crew, but, like the ship's crew, they were employed by the ship's owner pro hac vice and were paid by the ship's purser. Also like the ship's crew, the tank cleaners took their meals aboard the vessel in the crew's messroom. Unlike the ship's crew, they slept ashore. The entire tank cleaning job required one week. Perez was injured on the second day of his employment.

The plaintiff alleges that he was injured through the negligence of defendant Marine Transport Lines and the unseaworthiness of the Mission Loretto while performing his work cleaning the ship's tanks. He asserts his status was that of member of the crew of the Mission Loretto and as such was entitled to recover for his injuries under the Jones Act and the general maritime law. The defendant employer maintains that Perez is limited to the provisions of the Longshoremen's and Harbor Workers' Act for compensation for his injuries. Actually, it appears that the vessel and her owners are covered by insurance irrespective of the outcome of this litigation. The defendant, however, for reasons best known to itself, is anxious to have plaintiff and persons similarly employed classified under the Longshoremen's and Harbor Workers' Act rather than under the Jones Act.

Although the Jones Act provides a cause of action for "any seaman who shall suffer personal injury in the course of his employment," since the passage of the Longshoremen's and Harbor Workers' Compensation Act in 1927, the Supreme Court has restricted the benefits of the Jones Act to "members of the crew

---

1. 33 U.S.C.A. § 901 et seq.
2. 46 U.S.C.A. § 688.

3. The Mission Loretto was owned by the United States but chartered to the defendant, Marine Transport Lines, Inc.

of a vessel." Senko v. LaCrosse Dredging Corp., 352 U.S. 370, 371, 77 S.Ct. 415, 416, 1 L.Ed.2d 404; Swanson v. Marra Brothers, Inc., 328 U.S. 1, 66 S.Ct. 869, 90 L.Ed. 1045. To recover, therefore, under the Jones Act, the plaintiff must show that he was a member of the crew of the Mission Loretto at the time of his injury. This is a finding of fact based on the circumstances in each case. Senko v. LaCrosse Dredging Corp., supra; Gianfala v. Texas Company, 350 U.S. 879, 76 S.Ct. 141, 100 L.Ed. 775; South Chicago Coal & Dock Co. v. Bassett, 309 U.S. 251, 60 S.Ct. 544, 84 L. Ed. 732.

In making this determination, much loose language has been used by some courts[4] and by the textwriters[5] concerning the applicable considerations. It is said that the vessel in question must be in navigation. But a person employed on a vessel moored to a wharf,[6] or actually spudded into the bottom of the sea,[7] has been held to be covered by the Jones Act. Even a dredgeman employed aboard a dredge cutting its way across a shallow bay is covered.[8] Another misleading test mentioned by the textwriters and in some cases concerns the status of the claimant as a seaman. It is said that to recover under the Jones Act, one must be a seaman and a seaman is defined as one who aids in the navigation of a vessel. Carumbo v. Cape Cod S. S. Co., 1 Cir., 123 F.2d 991. Yet, unquestionably, everyone employed aboard a ship, including a cook,[9] a clerk,[10] a bartender,[11] a woman telephone operator,[12] an oil worker,[13] a fisherman,[14] and a musician,[15] has been held to be a seaman. It is difficult, therefore, to follow the definition of a seaman as one who aids in the navigation of a vessel.

The real test of coverage under the Jones Act is not whether the claimant is a seaman assisting in the navigation of the vessel or whether the vessel herself is plying the seven seas. The real, though by no means mechanical, test is whether the claimant is more or less permanently employed aboard the vessel in a capacity which contributes to the accomplishment of her mission.[16] For example, cooks on board vessels may be just as important as the navigators. Drillers, on vessels used as drilling rigs, may be more important than navigators. And musicians may assist in the entertainment of passengers. Consequently, cooks, drillers, and musicians, as well as other persons not subject to being tattooed like ordinary seamen, may be members of the crew and, therefore, covered by the Jones Act.

---

4. See Wilkes v. Mississippi River Sand & Gravel Co., 6 Cir., 202 F.2d 383, and cases therein cited.

5. Norris, The Law of Seamen, Vol. 2, § 656, at p. 318 says:

   "The decisive elements in determining who is 'a member of the crew' are (a) that the ship be in navigation; (b) that there be a more or less permanent connection with the ship; and (c) that the worker be aboard primarily to aid in navigation. One cannot be a 'member of a crew' if the ship is not in navigation, and there must be a more or less permanent connection between the ship and the worker as opposed to the temporary relationship existing in the case of a carpenter or mechanic who is brought aboard only to do repair work while the ship is in port."

6. Senko v. LaCrosse Dredging Corp., supra.

7. Gianfala v. Texas Company, supra.

8. McKie v. Diamond Marine Co., 5 Cir., 204 F.2d 132.

9. The James H. Shrigley, D.C.N.Y., 50 F. 287.

10. The Sultana, Fed.Cas.No.13,602.

11. The J. S. Warden, D.C.N.Y., 175 F. 314.

12. Keefe v. Matson Nav. Co., D.C.Wash., 46 F.2d 123, 1931 A.M.C. 426.

13. Gianfala v. Texas Company, supra.

14. Osland v. Star Fish & Oyster Co., 5 Cir., 107 F.2d 113.

15. The Sea Lark, D.C.Wash., 14 F.2d 201.

16. See Osland v. Star Fish & Oyster Co., supra.

856

The fact that navigation is not the principal use to which the vessel is being put does not negative Jones Act coverage. The fact that a vessel is moored to a wharf to perform her function as a dredge,[17] or sunk to the bottom to perform her function as a drilling rig,[18] does not in itself preclude Jones Act coverage of persons employed aboard. As long as a vessel is buoyant and capable of being floated from one location to another to accomplish her mission, members of her crew, meaning everyone employed aboard, on a more or less permanent basis, may be covered by the Jones Act.

■ The plaintiff here was not employed aboard the Mission Loretto on a more or less permanent basis. He was a temporary employee whose work concerned, not the accomplishment of the mission of the vessel, but preparation for taking the vessel out of navigation.[19] He was doing work which ordinarily would have been performed by a shore-side independent contractor and not by members of the crew of the vessel. Thus his status may be distinguished from that of the standby officer[20] or standby seaman who, though hired only for the period while the vessel is in port, nevertheless, during that time, replaces a member of the crew and performs seaman's duties concerned with the accomplishment of the mission of the vessel.

The plaintiff here, though employed aboard the vessel by the owner pro hac vice, was not a member of her crew under the principles above announced. His exclusive remedy, therefore, is under the Longshoremen's and Harbor Workers' Act. 33 U.S.C.A. § 905. See Seas Shipping Co. v. Sieracki, 328 U.S. 85, 102, 66 S.Ct. 872, 90 L.Ed. 1099.

Judgment for defendant.

17. Senko v. LaCrosse Dredging Corp., supra.

18. Gianfala v. Texas Company, supra.

19. Compare Desper v. Starved Rock Ferry Co., 342 U.S. 187, 72 S.Ct. 216, 96 L.Ed. 205.

20. See Weiss v. Central Railroad Company of New Jersey, 2 Cir., 235 F.2d 309; Curd v. Todd-Johnson Dry Docks, 5 Cir., 213 F.2d 864, affirming D.C., 118 F.Supp. 921, 1954 A.M.C. 484.